**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

**PRO SE PRISONER CIVIL RIGHTS COMPLAINT**

CASE NO. _____

**PLAINTIFF(S)** [Write the name(s) of the person(s) complaining. Do not use **et al.**]

Kevin W. Curruito

182628 / U1·46

1106 North Avenue

Bridgeport, Ct 06605

SCANNED at Bridgeport CCC
and Emailed
8/19/20 by DA, 84 pages
date   Initials   No.

vs.

**DEFENDANT(S)** [Write the name(s) of the person(s) you are suing. If you do not know a name, write "John Doe" or "Jane Doe." Include the defendant's rank or title if you know it. Do not use **et al.**]

Jane Doe #1, RN Chris Doe, Dr. Leonard Santassico, Capt. Dorsko

Officer(s) John Doe #1, #2, #3, Jane Doe, Dr. John Doe

Nurse Hiedi O'Connor, Dr. Preston, Dr. J. Bretton, Dr. J. Wright

H.S.A Richard Furey, Nurse Tiffany Dyle, Nurse S. Beckford

Nurse Jane Doe, Nurse John Doe

UConn Correctional Managed Health

Connecticut Dept. of Corrections

Complete every section and **SIGN THE LAST PAGE.**

*Revised 12/13/18*

## A. JURISDICTION

Because federal courts cannot hear every kind of claim, you must identify the law that says this court can hear your claim.  There are two possibilities.  Check one.

I can bring my complaint in federal court because I am suing:

1. _Kwc_ ✓ State, county or city employees for violating my federal rights under 42 U.S.C. Sec. 1983/1985/1986; OR

2. _____ Federal employees for violating my federal rights under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and 28 U.S.C. Sec. 1331.

## B. PLAINTIFF (THE PERSON FILING THIS COMPLAINT)

If there is more than one plaintiff, attach additional pages.  Provide items a, b, and c for each plaintiff.

1. First Plaintiff
   a. Full Name: Kevin W. Curryrrito
   b. Inmate Number: 182628
   c. Correctional facility: Bridgeport Comm, Correctional Center

## C. DEFENDANT (THE PERSON WHOSE ACTIONS YOU ARE COMPLAINING ABOUT)

If you are suing more than six defendants, attach additional pages.  Provide items a, b, and c for each defendant.

1. First Defendant
   a. Full Name: Jane Doe
   b. Rank or Title: Nurse
   c. Workplace: Bpt CCC

*Revised 12/13/18*

2. Second Defendant
   a. Full Name: CHRIS DOE
   b. Rank or Title: RN
   c. Workplace: WALKER C.I.

3. Third Defendant
   a. Full Name: DR. L. SANTASSICO
   b. Rank or Title: DOCTOR
   c. Workplace: WALKER C.I.

4. Fourth Defendant
   a. Full Name: CAPT. DORSKO
   b. Rank or Title: CAPTAIN
   c. Workplace: WALKER C.I.

5. Fifth Defendant
   a. Full Name: JOHN DOE #1, #2, #3
   b. Rank or Title: OFFICER(S)
   c. Workplace: WALKER C.I.

6. Sixth Defendant
   a. Full Name: JANE DOE
   b. Rank or Title: NURSE
   c. Workplace: WALKER / OSBORN C.I.

7. 7TH DEFENDANT.
   a. NAME. JOHN DOE
   b. RANK. DOCTOR
   c. WORKS. WALKER/OSBORN C.I

8. 8TH DEFENDANT.
   a. NAME: HIEDI O'CONNOR
   b. RANK; NURSE
   c. WORKS: OSBORN C.I

9. 9TH DEFENDANT
   a. NAME: 'PRESTON'
   b. RANK: DOCTOR
   c. WORKS: OSBORN C.I.

10. 10TH DEFENDANT
   a. NAME: RICHARD FOREY
   b. RANK: ADMINISTRATOR
   c. WORKS: OSBORN C.I.

DEFENDANTS CONT. ON BACK

## D. REASON FOR COMPLAINT

**WARNING:  Contact Inmate Legal Aid Program.  Common mistakes can get your case dismissed as frivolous or for failure to state a good legal claim.**  If this happens, you will still have to pay the filing fee, even if you are proceeding in forma pauperis.  To avoid losing your filing fee, please read this information carefully and consult Inmate Legal Aid Program before you file.

*Revised 12/13/18*

11. 11TH DEFENDANT
a. NAME: JOHNNY WRIGHT
b. RANK: DOCTOR
c. WORKS: OSBORN C.I.

12. 12TH DEFENDANT:
a. NAME: JOSEPH BRETTON
b. RANK: DOCTOR
c. WORKS: OSBORN C.I

13. THIRTEENTH DEFENDANT
a. NAME: TIFFANY DYLE
b. RANK: NURSE
c. WORKS: OSBORN C.I.

14. 14TH DEFENDANT
a. NAME: SHANON BECKFORD
b. RANK: NURSE
c. WORKS: OSBORN C.I.

15. 15TH DEFENDANT
a. NAME: JANE/JOHN DOE
b. RANK: NURSE(S)
c. WORKS: OSBORN C.I.

16. 16TH DEFENDANT
a. NAME: UCONN CORR. MNG. HEALTH
b. RANK: 'CORPORATION'
c. WORKS: STORRS, CT

17. 17TH DEFENDANT
a. NAME: CT. D.O.C
b. RANK: 'PUBLIC ENTITY'
c. WORKS: WETHERSFIELD, CT

1. Failure to use the prison grievance process before suing.  If you have not followed all the steps in the grievance process before you come to court, the defendants may ask the Court to dismiss your claims for "failure to exhaust administrative remedies."

2. Complaining about incidents that happened a long time ago:  If you are suing about events that happened more than three years ago, the defendants may ask the Court to dismiss your case under the "statute of limitations."

3. Suing people who were not personally involved:   You can generally only sue defendants who were directly involved in harming you.  In order to sue a supervisor, you must usually show that the supervisor knew about the actions of other defendants and failed to stop them.

4. Suing defendants who have immunity to suit for money damages:   You generally cannot sue the following people and entities for money damages:   the State of Connecticut; agencies of the state (like the Department of Correction); the United States government; the President of the United States (for actions taken while President); judges (for actions taken in connection with judicial duties); parole board officers (for actions taken in imposing parole conditions or revoking parole); prosecutors (for actions taken in performing duties integral to the criminal judicial process).  If you think you have a claim for money damages against such people or entities, check with Inmate Legal Aid Program first.  If you name defendants who are immune to suit from money damages and your suit is dismissed on that basis, you will lose your filing fee.

5. Complaining about a criminal conviction or prison disciplinary proceeding that resulted in loss of good time credits or other change to your time in prison.  If winning your claims "would necessarily imply the invalidity" of a criminal conviction or prison disciplinary punishment affecting the time served, then you cannot make these claims under Section 1983 unless you have already had the conviction or prison disciplinary proceeding invalidated, for example through a habeas proceeding. See *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

Please note that this is not a complete list of the problems you might encounter with your case.  The Court cannot give you legal advice and will not appoint a lawyer for you until it is clear that you have a good legal claim.  Until then, your best strategy is to call the Inmate Legal Aid Program before you file a complaint.  If Inmate Legal Aid Program says you do not have a good case, you should consider that advice very seriously.

Now you need to explain how your federal rights were violated (remember that not every violation of state law or prison regulations amounts to a violation of federal law).  What you need to tell the Court is who did what, when they did it, and how you were harmed.

*Revised 12/13/18*

You do not need to cite to the Constitution, any statutes, or any cases.  However, it is important to be specific about dates, times, and the names of the people involved.  It is helpful to put each important fact in a separate, numbered paragraph.

If you do not know the name of the person who harmed you, call that person Defendant Doe and provide some information from which it will be possible to identify the person - for example, gender, rank and shift.  If there is more than one defendant whose name you do not know, call them Defendant Doe1, Defendant Doe2, and so on.

Here is an example of the proper way to describe your claims:

Example of Statement of Case
1. On April 12, 2015, I fell and injured my foot during a basketball game with other prisoners.
2. After the game, I asked Defendant CO Brian Smith to let me see the nurse.  Defendant CO Brian Smith told me that I could not see the nurse because it was not an emergency.
3. During the afternoon, my foot became swollen and very painful.
4. At about 5 p.m., in the presence of my cellmate Bill Bloggs, I told Defendant Lieutenant Jane Doe, who was the shift supervisor, that I needed a doctor and showed her my swollen foot.
5. Defendant Lieutenant Jane Doe brought me two Tylenol and told me that I could not see the nurse until sick call the next morning.
6. The next day, I could not get out of bed because my foot was so swollen and painful. I had to go to hospital and have an operation to fix my foot.
7. I had to take pain medication for two months after the operation and have needed a walking stick for support since that time.
Now describe your claims.

Statement of Case
1.


2.           NEXT
             PAGE
3.


4.

*Revised 12/13/18*

5

5.



PLEASE SEE PAGES A — Z.6
ATTACHED BETWEEN PAGES 6 &
7 OF THIS FORM

6.

7.

8.

9.

10.

If you need more space, attach additional pages, but be as brief as possible.

## E.   REQUEST FOR RELIEF

Tell the court what kind of relief you want.   **Remember**: (1) You can only get money damages for mental or emotional injury if you were also physically injured; (2) Money damages may be reduced to pay restitution to victims of your crime and fees for a courtappointed attorney, if you had one; (3) You cannot use a Section 1983 or *Bivens* action to request release from custody, a reduction in your sentence, or a restoration of good time credits.  For any of these, you must request a Writ of Habeas Corpus.

*Revised 12/13/18*

I. Statement of Case:

1.) On or About September 19, 2017 I Was Transferred To Walker Correctional Institution (W.C.I) For Processing Having Been Sentenced To 27 Months To Serve Within The State of Connecticut, Department of Corrections, Who Excluded / Denied Benefit of Services Para 2 - 108 Incorporated By Contract With UConn, *1.

2.) I Was Previously Held On Bond At The Bridgeport Correctional Facility And Pain Medication Was Discontinued In Error By Nurse Jane Doe #1 After I Requested The Termination of Other Medication,

3.) I Have Serious Medical Needs For The Treatment of Chronic Nueropathic Pain In My Right Arm For An Injury To My Nerve And Right Arms Tricep And Bicep Stemming From An K.9 German Shephard Dog Bite Injury And, Infra, I Also Have An Heart Condition And Chest Wall Injury And Suffered An Heart Attack That Was Left Untreated,

4.) On September 19, 2017 At W.C.I I Requested To Be Seen At Sick Call During The Medical Intake Process To Be Treated For Chronic Nueropathic Pain Due To The Above Para 1 -3 Incorporated,

*1.(BCC)

° A °

5.) Plaintiff Avers That Without Treatment He Suffers From Problems Grasping, Lifting, Holding, Moving, Extending, Operating The Right Arm Generally And Plaintiff Experiences Pain In His Epidermis As Well In Which He Experiences Problems Without Treatment In His Right Arm Such As An Cold Numb Pain Intensified By Brushing Arm On Things Plaintiff Is Also Right Handed And Failure To Treat Effects His Ability To Write And Communicate With Family, Friends, Attorneys, Courts, Religious Organizations, Corrections Officials Without Experiencing Pain While Writing And Its After Effects For Having Wrote,

6.) Plaintiff Avers The Inability To Properly Use His Right Arm Without Treatment Effects His Daily Life And The Quality Thereof As Well As Leaving Him In An Chronic Pain State,

7.) On or About September 21, 2017 I Was Called To Sick Call As Requested (Para 4, Supra.) At W.C.I By Registered Nurse (RN) Chris Doe,

8.) I Explained To RN Doe That I Had An Chronic Nueropathic Pain Condition From An Dog Bite And That The Pain Was Significant,

· B ·

9.) RN Chris Doe Treated Plaintiff In An Disgruntled And Unprofessional Manner Appearing To Be Disinterested And Unconcerned With Plaintiff's Medical Condition,

10.) RN Chris Doe Remained At The Nursing Area Counter Standing Looking Over Plaintiff's Medical File While The Plaintiff Was Seated Accross From Her Approx 7 to 9 Feet Away In An Chair,

11.) RN Chris Doe Did Not Physically Examine Plaintiff To Physically View Injury, Never Leaving Counter Area,

12.) Plaintiff Explained That He Needed To See The Doctor To Be Placed On The Proper Medication; RN Chris Doe Stated ... "I Am Not Placing You On The Doctors List, I See Nothing About Dog Bite's In Your File", While Failing To Physically Examine Plaintiff, And Failing To Do An Complete Medical Record Review Looking Only In The Medical Chart (H') Created At Bcc On May 1, 2017. Plaintiff's Medical Record's Are A, B, C, D, E, F, G, H And An Electronic Record As of April 2019,

13.) Plaintiff Has Puncture Wounds And Approx (6) 3 Inch Scar's On Top of And Underneath His Right Bicep / Tricep

C

And His Medical Record Is Replete With Doctor's
Order's And Clinical Notes In Regard To His Nueropathic
Condition. Plaintiff's Right Tricep Is Severed, Atrophied
And Hyperextends The Elbow. Plaintiff's Medical Record
Contains Numerous 11 x 12 Glossy Color Photo's of His
Dog Bite Injury And An History of Treatment,

14.) RN Chris Doe Would Not Allow Plaintiff To Interject
or Offer Historical or Clinical Information While Giving
Plaintiff An Box of (24) Motrin 325 mg Tablets An
3 Day Supply To Treat An Chronic Nueropathic
Condition. Further,

15.) Based On Information And Belief Plaintiff Avers
Motrin 325 mg Is An Ineffective Means of Treating
Chronic Nueropathy And Has No Medical Benefit For
Patients Suffering With Chronic Nueropathy. RN Chris Doe
Took An Easier And Less Efficacious Means of Treatment
And Made An Medical Judgement Suited For An Physician,

16.) Based On Information And Belief RN Chris Doe
Has An Habit of Performing Her Duites In An Disgruntled
Manner And Utilizing Substandard Methods And/or Poor
Work Habits In Treating Patients Under Her Care And
These Habits Effected Plaintiff's Medical Care And
His Ability To See An Doctor,

D

17.) Based On Information And Belief Plaintiff Avers RN Chris Doe Made No Medical Jodgement Based In Her Own Failure To Examine Plaintiff And Failure To Perform And Proper And Diligent Medical Chart Review In Evaluating Plaintiff And/or His Medical Condition,

18.) Plaintiff Was Sent Back To His Housing Unit C.2.52 Without The Benefit of Having Been Properly Medically Provided For By RN Chris Doe Upon Information And Belief of Plaintiff. Para 1-18 Incorporated As To Facts,

19.) Plaintiff Avers RN Chris Doe Was Also Negligent In Performance of Her Duties Not Showing The Same Skill And/or Care of Others of Similar Professional Standing And/or Education And/or Training, Para 1-19 Incorporated,

20.) On or About September 26, 2017 I Began Experiencing Chest Pains And Shooting Pains Down My Left Arm Into My Left Hand At W.C.I While Within My Cell C.2.52

21.) Based Upon Information And Belief Plaintiff Avers He Was Having An Heart Attack

· E ·

22.) Plaintiff Pressed The Emergency Call Box Button Within C-2-52 And Recieved No Responce From Officer John Doe On Duty From 12:00 Am To 8:00 Am,

23.) Based Upon Information And Belief The Emergency Call Box Button Was Broken or Ignored By Officer John Doe At Approx 7:30 Am,

24.) As An Result Plaintiff Began To Write An Inmate Request To Stick In The Cell Door And Wait By The Cell Door For The Next Available Staff Member To Tour The Unit To Inform Staff of His Medical Incident. Staff Members Typically Tour The Unit Every 15 Minutes,

25.) At Approx. 8:30 Am Captain Dorsko Was Touring The Unit And She Came Upon Cell Door C-2-52. Plaintiff Stopped Her And She Took The Request Indicating That I Was Having An Medical Incident With My Heart (i.e., Heart Attack, Heart Injury, Heart Ailment, Chest Wall Injury, Chest Pains, Muscle Spasm's, Heart Palpitations),

26.) Capt. Dorsko Recieved The Request From Plaintiff And Proceeded To Complete Her Tour of Unit,

· F ·

27.) At Approx. 9:00 Am Capt. Dorsko Called Me To Her Office Adjacent To The C. Pod Cell Block And Thereafter Telephoned The Medical Unit To Have Me Seen By The Medical Doctor,

28.) At Approx. 9:15 Am Plaintiff Was Escorted On Foot By Capt. Dorsko To The Medical Unit To The Office of Dr. Leonard Santassico,

29.) Plaintiff Explained To Dr. Santassico That He Was Having Chest Pains That Felt Like An Heart Attack With Shooting Pains Down His Left Arm Into His Hand And Pressure In His Chest, As Well As, An Sensation of Something 'Stabbing' Plaintiff In His Left Chest / Heart Wall And That His Heart Was Fluttering,

30.) Dr. L. Santassico And Plaintiff Spoke For Approx. 20 Minutes Sitting Side By Side In Seperate Chairs. After This Para. 29 Supra., Discussion Dr. Santassico Sent Plaintiff Back To His Unit From The Medical Unit Without Escort And/or Any Medical Treatment For His Complaint of Having Had Chest Pains And Plaintiff's Belief of Having An Heart Attack And/or Incident With His Heart,

31.) Dr. L. Santassico At No Time Gave Plaintiff An Physical Examination For His Heart Condition Or Had Any Other Medical Personel At W. C. I Provide An Physical And/Or Diagnostic Examination Nor Made Any Reference And/or Statement of Intent To Have Plaintiff Physically Examined And/or Diagnostically Treated For His Complaint,

32.) Based Upon Information And Belief UConn Correctional Managed Health (UConn) Maintains An Protocol That Dr. L. Santassico Knew Or Should Have Known Provides For Immediate Physical Exam And Diagnostic Treatment For Inmate Patient Complaints of 'Chest Pains' And/or 'Heart Attack' And The Telephonic Faxing Of Diagnostic Electro cardiogram Readings To On Call And/or Emergency Room Physicians For Evaluation And Further Treatment Considerations,

33.) Upon Return To His Housing Unit Plaintiff Attempted To Speak To Capt. Dorsko Who Declined To Talk To Plaintiff Waving Him Off From Her Office. Plaintiff Was Attempting To Inform Her He Was Not Treated At Medical,

-H-

34.) Plaintiff Returned To His Cell And Suffered Chest Pains, Pressure, Shooting Pains Down His Arm And At Approx. 12:30 Pm While Attempting To Get Some Air Seated In The C. Pod Recreation Area Outside Yard, Plaintiff "Passed Out" Losing Consciousness While Seated On The Bench Falling Over To His Right And Onto His Knees From Continued Physical Ailments Associated With His Chest Pains / Heart Attack,

35.) At Approx. 12:45 Pm Plaintiff Was Called To The Officers Station By Officer John Doe #1 And Informed To Pack His Belongings That He Was Being Transferred. Plaintiff Packed His Property And Was Thereafter Escorted To The Admissions & Processing Area On Foot By An Officer John Doe #2, For Transfer,

36.) Upon Information And Belief Dr. L. Santassico Had Plaintiff's Medical Score Raised To An 4 And Transferred Plaintiff For Placement Into The *2 Osborn Correctional Institution Hospital On "Cardiac Status", And/or "Other" Causes,

2. "Osborn"

⸳ I ⸳

37.) Plaintiff Waited Approx. 10 Hours And 45 Minutes In An Transfer Area 'Bull Pen' At W.C.I Alone With No Medical Attention By RN Chris Doe And/or Dr. L. Santassico And/or Any Other Jane Doe Medical Personel At W.C.I,

38.) Plaintiff Aver's RN Chris Doe Prepared His Medical Transfer Summary Document Within His Medical Record Indicating Within That Summary Plaintiff Needed 'Follow Up Care' For Medical To The Recieving Facility 'Osborn' Indicating 'Knowledge' Of Plaintiff's Condition Medically And Failure To Provide Treatment For Plaintiff's Complaint of An 'Heart Attack,'

39.) Based Upon Information And Belief Plaintiff Avers That At Some Point After Plaintiff's Conversation With Dr. L. Santassico, RN Chris Doe Was Advised of Plaintiff's Active Medical Condition And Failed To Act In Any Manner To Ensure Plaintiff Was Medically Examined And/or RN Chris Doe Was Advised To Treat Plaintiff By Dr. Santassico or Dr. John Doe

J.

And In Accordance With Her Habits Failed To Treat Plaintiff In Accordance With Protocol Choosing Rather To Relegate Treatment To An Note For 'Follow Up' Care To The Recieving Facility 'Osborn' Rather Than Physically And/or Diagnostically Examining Plaintiff On Her Own Which Training And Experience Would Dictate With An Serious Medical Complaint Such As An 'Heart Attack', 'Chest Pains', 'Heart Injury'.

40.) At Approx. 10:45 Pm Plaintiff Arrived At 'Osborn' Corr. Inst. And Was Given An Medical Intake By Nurse Hiedi O'Connor (Eleven Hours After 'Initial Complaint),

41.) Nurse O'Connor Placed Plaintiff On 'Cardiac Status' And Assigned Plaintiff To Special Housing. Nurse O'Connor Failed To Physically Examine Plaintiff And/or Diagnostically Examine Plaintiff. Nurse H. O'Connor Had No Conversation With Plaintiff Regarding Medical Conditions Prior To Placing Plaintiff On 'Cardiac Status',

42.) Based Upon Information And Belief Nurse H. O'Connor Was Communicated To By Nurse Chris Doe or Dr. L. Santassico With Regard To Plaintiff's Complaint of Having An 'Heart Attack' And Failed To Treat,

· K ·

43.) Based Upon Information And Belief Nurse H. O'Connor Also Failed To Ensure Plaintiff Would Be Properly Seen For 'Follow-Up' Care As Directed By Nurse RN Chris Doe At W.C.I And Failed To Notify The Cardiac Care Physician Dr. Preston Of Plaintiff's Cardiac Complaint/Condition And Need For Treatment. Plaintiff Also Avers RN Chris Doe Requested 'Follow-Up' Care In Her Transfer Summary With Full Knowledge That Plaintiff Recieved No Care/Treatment At All 'Policing' The Failure To Provide Treatment,

44.) Plaintiff Avers Dr. Preston Failed To Properly Treat, Manage, Monitor 'Cardiac Status' Inmates, Including Himself, By Failing To Properly Train And Supervise The Nursing Staff, Including Nurse O'Connor And/or Dr. John Doe,

45.) Plaintiff Was Escorted To His Housing Unit At Approx. 12:00 Am Shift Change,

46.) Based On Information And Belief Plaintiff Avers Nurse H. O'Connor Failed To Properly Treat or Provide Treatment Being The End of Her Shift Was At

。 L 。

12:00 Am And Plaintiff Arrived At Approx. 10:45 PM And/or Deliberate Indifference And/or Improper Training And Supervision And/or An Habit Of Indifference / Negligence In Providing Medical Care,

47.) September 27, 2017 Through October 14, 2017; 19 Days, Plaintiff Avers He Was Never Called To The Medical Unit Based On His Medical Transfer For 'Follow - Up'[!] Medical Care As Directed In Transfer Summary By RN Chris Doe At W.C.I For Treatment Stemming From The 'Heart Attack' He Suffered On September 26, 2017. Osborn Medical Unit Is Managed By H.S.A R. Furey, Dr. Preston, Dr. Johnny Wright, Dr. Joesph Breton, Nurse(s) T. Dyle, S. Beckford, H. O'Connor Who Provide Inmates Medical Services And Were Advised On or About September 26, 2017 Of Plaintiff's Medical Condition By W.C.I Para 42. Incorporated, Para 1-47 Incorporate, Infra, Incorporated,

48.) Based Upon Information And Belief The Osborn Medical Unit, Including Defendants of Para 47. Incorporated, Were The Subject of Numerous Lawsuits

· M ·

And Legislature Concerns Over The Numerous Failures In Provision of Medical Care To Inmates And The Deaths of Inmates Due To Medical Failure(s) To Adequately And Timely Provide Medical Care To Inmates or Properly Treat, Diagnose, Examine Inmate Patients In The Connecticut Department of Corrections (CTDOC),

49.) Plaintiff Was Unknowledgable Of The Problems With Medical Care Within The State Prison System And Was Given No Advisement Or Advice On How To Properly Seek Treatment While Delays In Providing Care Were Harming Inmates, Denials of Specialist Testing Were Effecting Inmate Health, And Communication Failures Between UConn And CTDOC At Osborn C.I. Were Hampering Inmate Medical Care In General, Plaintiff Was Also Unorientated To The Facility At Osborn And Avers Orientation Is Critical To Understanding Facility Operations And Grievance Process,

50.) Based Upon Information And Belief The Dept of. Corrections And UConn Were Attempting To Keep The Medical System Failures At Osborn 'In House' Under Close Wraps / Secret Evidenced By There

· N ·

Mutual Failures To Advise Inmates Of The Problem
And What To Do If Effected By The Medical
System Failures At Osborn. H.S.A Richard Furey
Is The Medical System Administrator At Osborn
And Knew or Should Have Known of The System
Failures Effecting Inmate Medical Care, Especially
In Plaintiff's Case Infra, Incorporated, Supra.
Incorporated,

51.) Plaintiff At This Time Where UConn Was Being
Removed As An Provider of Medical Care For
Prisoners Had Serious Medical Needs For Treatment
Of An Undiagnosed And Unexamined Heart Condition
Stemming From An Heart Attack/Ailment/Injury
To His Heart That Took Place On or About September
26, 2017 And For Chronic Nueropathic Pain Stemming
From An Dog Bite Injury Supra.,

52.) Plaintiff Avers UConn Lost Its Contract To
Provide Inmates Medical Care Due To Inmate Deaths
Stemming From 'Substandard Quality Controls' And
'Policing' Itself,

53.) Based On Information And Belief 'Policing' Means
Gaurding, Shielding, Covering, Arresting Developement
Of Adverse Outcomes By The Corporation UConn, And
Evince's 'Knowledge' And Deliberate Indifference,

54.) On or About October 8, 2017 Plaintiff Wrote An Request For Medical Treatment After Not Being Called For 'Follow-Up' Care And Placed It In The Hospital Medical Box As He Was Not Called To Medical For 'Follow-Up' or 'Cardiac Clinic' As Advised By Nurse H. O'Connor On September 27, 2017 Upon Intake,

55.) On October 15, 2017 Plaintiff Was Called To Medical By Nurse T. Dyle For Sick Call Resulting From His Para 54 Request,

56.) Based Upon Information And Belief Plaintiff Avers After His Sept 26, 2017 Arrival At Osborn His Medical Record Was Never Properly Reviewed By Dr. Preston, Dr. J. Bretton, Dr. J. Wright And/or Nurse T. Dyle, H. O'Connor, S. Beckford or Nurse Jane Doe, John Doe To Effect Proper Medical Care / Treatment Since His 'Heart Attack' And Medical Transfer To Osborn,

57.) Plaintiff Recieved 'No Treatment' For An Known And Complained of 'Heart Attack' For (19) Days, September 26, 2017 To October 15, 2017 By Defendants Para. 1~57 Incorporated As To

Defendants And Facts,

58.) Based Upon Information And Belief Plaintiff
Avers Defendants Bretton, Wright, Preston, Dyle,
Beckford, O'Connor Were Knowledgeable of Plaintiff's
Medical Condition And Presence At Osborn Having
Been Advised By Dr. L. Santassico and/or Nurse Chris
Doe of W. C. I Prior To Plaintiff's Medical Transfer.
Plaintiff Avers Nurse H. O'Connor of Osborn Placed
Plaintiff On 'Cardiac Status' Based Upon This
Communication and/or The Request Written And Given
To Captain Dorsko Within Plaintiff's Medical File,

59.) On October 15, 2017 Nurse T. Dyle Performed An
Diagnostic EKG On Plaintiff For His Complaint Of
Continued Pain In His Chest Wall And Feeling Of
(Something Sticking In The Wall) Of Plaintiff's Heart
And Having Acute Pains From Same Location Residual
From The Original Medical Incident Left Untreated
(19) Days Earlier On September 26, 2017. Plaintiff
Also Requested To Be Treated For His Chronic
Nueropathic Pain Condition At This Occassion,

ϒ Q .

60.) Nurse T. Dyle Faxed EKG Results To An Emergency Room Doctor Who Cleared Plaintiff For Return To His Housing Unit Stating There Were ...' No Significant Changes' To His Heart Arythmia Plaintiff Was Told By Nurse Dyle He Would See Dr. Bretton In (2) Weeks And Was Placed On The Doctors List, And Sent To His Housing Unit,

61.) Nurse T. Dyle Gave Plaintiff An (3) Day Supply of Acetmetophen 325 Mg To Be Distributed By Nursing Protocol. Plaintiff Remained In Pain As This Medication Was Inefffective As An Treatment,

62.) Based Upon Information And Belief Acetmetophen 325 Mg Is An Easier And Less Effacacious Treatment Method And Ineffective For Treating Chronic Noefopathy And/or An 'Heart Ailment/ Injury' According To Modern Medical Science And Opinion,

63.) On Or About October 17, 2017 Dr. J. Bretton Notated Plaintiff's Medical Record For The Distribution of Acetmetophen 325 Mg By Nurse T. Dyle. Plaintiff Was Also Treated In The Past By Dr. J. Bretton And Prescribed

An Stronger Medication For Chronic Nueropathic Pain.
Plaintiff Avers Dr. J. Breton Notating His Medical
Record Indicates Knowledge of His Medical Condition
And Presence At Facility As Of On or Before
October 17, 2017. Dr. J. Breton Knew or Should
Have Known That Acetmetophen 325 Mg Was Insufficent
To Treat Chronic Nueropathic Pain And Ineffective
As An Form of Medical Treatment, Especially For
(3) Days Only,

64.) Plaintiff Avers He Waited (2) Weeks And Was
Not Seen By Dr. J. Breton As Scheduled By
Nurse T. Dyle <sup>and</sup>/or Nurse Dyle Failed To
Schedule Plaintiff For Doctor As Stated Supra.,

65.) Plaintiff Wrote An Request To Medical Approx.
November 4, 2017 Wondering If He Was Still On
List To See The Doctor As He Had Not Been
Called As Scheduled For His Appointment,

66.) Plaintiff Was Responded To On The Para 65.
Request By Nurse T. Dyle That His Doctors
Appointment Would Be Soon. Plaintiff Indicated
He Was In Pain And Nurse T. Dyle Failed To
Call Plaintiff To Medical To Extend <sup>and</sup>/or Continue
Nursing Protocol For Acetmetophen 325 Mg For Pain
Para. 1-66 Incorporated, Never Called Plaintiff Again,

67.) Plaintiff Continued To Wait In Pain With His Chest Wall / Heart Condition And Chronic Nueropathic Pain Condition To See Doctor J. Brettion For Over 127 Days And His Doctors Appointment Was Changed Approx. 8 Times Delaying Care For Serious Medical Needs, PARA 1 - 108 INCORPORATED,

68.) Plaintiff Living In Pain With An Undiagnosed Heart Condition After Experiencing An 'Heart Attack' or Injury Was Adversely Effected In Living His Daily Life And His Imprisonment Was Burdened And Made An Cruel Form of Punishment By The Failure To Provide Medical Care. Plaintiff Could Not Participate In The Ordinary Affairs Of Prison Life Without An Concern For His Health And/or An Fear of Death, Degeneration And/or Serious Physical Injury By The Lack of Standard of Care Medical Practices,

69.) Plaintiff On An Daily Basis Was Overwhelmingly Concerned With His Physical Health And Reliant Upon The System In Place For Medical Provisions And Subject To Its Policies And Protocols Which Were Being 'Policed' For Appearance Upon Information And Belief. Plaintiff Was Unaware UConn Was Actively 'Policing' Itself Though Obscurely Cognating / Seeing An Method of Shuffling Off His Health Care

Complains To The Medical Unit Defendants Incorporated,

70.) Plaintiff Wrote Numerous Requests Over An 120 Day Period From September 27, 2017 Until Appox. January 14, 2018 In An Attempt To Be Seen By The Doctor And/or At Sick Call After His Heart Attack Medical Incident And Continued Chest Pain, Heart Palpitations And Chronic Neuropathic Pain Condition And The Continued Failure To Provide Adequate And Timely Treatment,

71.) Nurse T. Dyle And Nurse S. Beckford Responded To These Requests Advising Plaintiff Every (2) Weeks That His Doctor's Appointment Would Be Soon And/or Were 'Changed Unfortunately' And/or 'At End of Month'. Plaintiff Avers No Matter What Was Stated He Was Never Called For The Doctor And Provided No Treatment By Any Other Means, Para. 1-71 Incorporated,

72.) Based On Information And Belief Plaintiff Avers Delay of Care Was Such An Practice At Osborn That The Medical Defendants Incorporated Came Up With An Quicker Responce To Deal With Inmate Requests Creating An Typed White Sticky Label Stating... 'Doctors Appointment Was

· U ·

Changed Write Sick Call For Any Problems' Though
When Plaintiff Wrote Advising He Was In Pain
He Was Never Called To Sick Call And Recieved
An Return Request Stating He Was On Doctors
List And With An 'White Sticky Label'

73.) Based Upon Information And Belief Plaintiff
Avers Inmate Medical Appointments On The Doctors
List At Osborn Were Delayed Intentionally At
Least (6) Months For Budgetary Reasons Grounded
In Favor Of Using Budget of 100 Million Dollars
Provided UConn By CTDOC For Employee Overtime
And Stretching Inmate Care From Budget To
Budget Annual While Employee's Abused Overtime
Leaving Inmate's Untreated And Denying
Specialist Care As An Standard Practice Defendants
Knew or Should Have Known That There Practices
Were Wrongful And/or Deliberately Indifferent And/or
Grossly Negligent, And/or Other Causes,

74.) On Or About November 27, 2017 Plaintiff Met
With H.S,A R. Furey Regarding Failure To Provide
Medical Treatment For His Heart And Nutropathic
Pain Conditions, Para 1-74 Incorporated, H.S,A Furey
Looked On The Computer In His Office And Advised

· V ·

Plaintiff He Had An Medical Appointment 'Soon' And That He Would Talk To Dr. J. Bretton Whom He Was Scheduled To Recieve Treatment From Since October 15, 2017 Regarding Seeing Plaintiff,

PARA. 75.) Plaintiff Waited Approx. 14 More Days After Seeing H.S.A R. Furey And Wrote An Request On or About December 15, 2017 Which Was Responded To By Nurse S. Beckford Stating That The Medical Appointment Would Be Soon. Plaintiff Again Indicated In The Request That He Was In Pain And Was Not Treated By Being Called To Sick Call. At This Time Plaintiff Was Waiting Over 85 Days To Be Treated For Serious Medical Needs,

PARA. 76.) On or About December 27, 2017 Plaintiff Was Called To Medical By Nurse Jane Doe And Given An (3) Day PRN To Be Distributed By Nursing Protocol For Ibuprofen 325 Mg Based Upon Plaintiff's Request To Medical Unit Indicating He Was In Pain Written On or About December 20, 2017. Plaintiff Was Given This Medication For Treatment of Chronic Nueropathic Pain And Chest Wall / Heart Condition Indicating Knowledge Of An Need To Treat And Failure To Do So Timely And Appropriately Based Upon Information And Belief,

PARA. 77.) Based Upon Information And Belief Plaintiff Avers Ibuprofen 325 Mg. Is An Ineffective Over The Counter Medication For Treatment of Chronic Nueropathic Pain

W.

According To Modern Medical Science And Treatise(s) Dealing With Treatment of Chronic Nueropathy And Heart Conditions,

PARA.   78.) On or About January 14, 2018 Plaintiff Recieved An Return Inmate Request From Nurses, Beckford Indicating Plaintiff's Doctor's Appointment Was Scheduled For The... "End of The Month" And/or Soon." Plaintiff Having Had Been Told This Approx 8 Times Over (5) Months And Having His Doctor's Appointment Changed Approx. (10) Times As Well As Having Been Grossly Neglected From The Onset of His Heart Attack Filed An Inmate Health Care Grievance (110) Days After Experiencing An Heart Attack At W.C.I. Plaintiff Filed (3) Distinct Administrative Remedies At Osborn C.I.: a.) Medical Practices. b.) System Failures c.) Plaintiff's Individual Medical Treatment. Plaintiff Also Filed Earlier Health Care Grievances And He Was Advised By Medical That His Health Care Was Appropriate And 'No Further Action' Was Necessary At An Time When Plaintiff Had Recieved 'No Doctor's Treatment At All',

PARA.   79.) On or About January 18, 2018, Approx (4) Days After Plaintiff Filed His Inmate Health Care Remedy Request Dr. Joespy Breton, Plaintiff's Doctor, Resigned From Osborn C.I. And Stating In An Later Deposition

· X ·

Said He Resigned From Osborn C.I. Due To ... "Delays
In Care Harming Inmates, Denials of Specialist Testing,
Communication Failures Between UConn And OTDOC",

80.) Plaintiff Avers Dr. J. Bretton Failed To Treat Him
When He Knew or Should Have Known That Plaintiff Had
Serious Medical Needs, Para 1-80 Incorporated, Stemming
From His Heart Attack, Medical Transfer, Sick Call
Visit At Osborn C.I. And Notating Medical File For
Distribution of Medication, Past Treatment of Plaintiff
For Chronic Nueropihc Pain And On List To See Him
For Doctor's Care,

81.) Plaintiff Avers Dr. J. Bretton Knew or Should Have
Known That Plaintiff Would Need Treatment By An
Cardiologist And of The Medical System Failures At
Osborn C.I. And Failed To Treat Plaintiff By
Sending Him To Hospital For Cardiac Care By His Own
Authorization,

82.) Plaintiff Avers Dr. J. Bretton Failed To Treat Him
For His Chronic Nueropathic Pain Condition Which He
Knew or Should Have Known Would Cause Plaintiff
Significant Daily Pain, Discomfort And Potentially Lead
To Other Injuries,

83.) Based Upon Information And Belief Plaintiff Avers
His Inmate Health Care Remedies Were An Catalyst
In The Resignation Decision Making Process of Dr. J.
Bretton As He Knew of Plaintiff's Medical Needs And

· y ·

FAILED TO PROVIDE SCHEDULED DOCTORS TREATMENT,

- 84.) ON OR ABOUT JANUARY 31, 2018 PLAINTIFF WAS SENT TO THE MEDICAL UNIT TO SEE DR. J. WRIGHT FOR AN INMATE ADMINISTRATIVE REMEDY DOCTORS DISCUSSION OF PLAINTIFF'S HEALTH CARE GRIEVANCE DEALING WITH FAILURE TO TREAT PLAINTIFF'S HEART CONDITION AND CHRONIC NUEROPATHIC PAIN CONDITION FOR (127) DAYS SINCE HIS 'MEDICAL TRANSFER' TO OSBORN C.I. ON SEPTEMBER 26, 2017

- 85.) UPON ARRIVAL AT THE MEDICAL UNIT PLAINTIFF WAS SEATED IN THE WAITING AREA AND NURSE S. BECKFORD WALKED BY CLICKING THE PEN IN HER HAND AND STATING... " WHO DO YOU THINK YOUR SUING KEVIN ",

- 86.) BASED UPON INFORMATION AND BELIEF NURSE BECKFORD IS/WAS INVOLVED IN OTHER LITIGATION AT THIS TIME AND WAS FAMILIAR WITH PLAINTIFF'S NUMEROUS REQUESTS AND GRIEVANCE'S AND ASSUMED PLAINTIFF WOULD BE FILING SUIT OVER FAILURES IN HIS MEDICAL CARE. PLAINTIFF BELIEVES NURSE BECKFORD WAS ATTEMPTING TO SHOCK, INTIMIDATE, FREEZE, IMPEAD, FRUSTRATE AN VALID LEGAL CLAIM BY HARRASSMENT, INTIMIDATION IN AN RETALIATORY MANNER,

- 87.) PLAINTIFF WAS CALLED IN TO SEE DR. J. WRIGHT TO AN OFFICE ON THE FIRST FLOOR OF THE OSBORN C.I. HOSPITAL. DR. J. WRIGHT ASKED PLAINTIFF... " WHAT DO YOU WANT ME

· Z ·

To Do For You" While Plaintiff Was Seated In An Chair Accross From Dr. Wright Who Was Behind An Desk Looking At Plaintiff's Medical Record,

88.) Plaintiff Explained To Dr. Wright That He Had An Heart Attack In September And Was Medically Transfered To Osborn C.I. And Was On The List To See Dr. J. Bretton From The 2nd Week of October For Treatment of His Heart Condition And Chronic Noeropathic Pain Condition And Has Remained Untreated By An Doctor,

89.) Plaintiff Informed Dr. Wright That His Heart Was 'Fluttering' And Felt Like Something Was 'Sticking In The Wall of My Heart And/or Chest Wall' And That He Wanted An CT Scan of His Heart/Chest And Referral To An Cardiologist And Treatment For Chronic Noeropathic Pain And Chest Pain,

90.) Based Upon Information And Belief Plaintiff Aver's That Dr. J. Wright No Medical Judgement By Leaving It Upon Plaintiff To Dictate Course of Treatment And Failing To Physically Examine Plaintiff, Dr. Wright Took An Easier And Less Effacacious Mode of Treatment, Infra, Supra Incorporated,

91.) Based Upon Information And Belief Plaintiff Aver's Dr. Wright Deferred Medical Judgement To The Utilization Review Committee Doctors John Doe #1, #2, #3

FOR APPROVAL OF AN CTScan. PLAINTIFF AVERS THAT BY POLICY DR. WRIGHT HAD THE CHOICE TO AUTHORIZE TREATMENT AS HIS PRIMARY CHOICE AND DEFERRED HIS JUDGEMENT FOR AN EASIER METHOD OF SENDING AN REQUEST FOR SPECIALIST TESTING TO THE U.R.C COMMITTEE DOCTOR'S JOHN DOE #1, #2, #3. DR. WRIGHT ALSO KNEW THE U.R.C COMMITTEE WAS DENYING NUMEROUS VALID TREATMENT REQUESTS FOR SPECIALISTS AND SPECIALIST TESTING / DIAGNOSTIC TESTING, THE CAUSE OF DR. J. BRETZN'S RESIGNATION,

92.) BASED UPON INFORMATION AND BELIEF PLAINTIFF AVERS DR. J. WRIGHT AND DR. J. BRETTON ARE KNOWLEDGABLE OF SYSTEM FAILURES AT OSBORN C.I. AND HAVE USED THE U.R.C COMMITTEE REFERRAL OF TREATMENT REQUESTS FOR SPECIALIST TESTING AS AN MEANS OF ATTEMPTING TO GENERATE THE APPEARANCE OF MEDICAL JUDGEMENT RENDERED TO ESCAPE LIABILITY FOR TREATMENT FAILURE(S). PLAINTIFF AVERS THAT THERE IS AN STRUCTURED CONSPIRACY MOTIVATED BY PECUNIARY INTEREST IN FAILING TO PROPERLY TREAT INMATES, THE PLAINTIFF, BY UCONNCMN AND ITS EMPLOYEES AND IT IS DESIGNED TO USE THE BUDGET PROVIDED UCONN FOR EMPLOYEE "OVERTIME",

93.) PLAINTIFF AVERS DR. J. WRIGHT FAILED TO REFER HIM TO AN CARDIOLOGIST AND IS NOT AN CARDIOLOGIST,

94.) PLAINTIFF AVERS DR. J. WRIGHT FAILED TO PERFORM AN PHYSICAL EXAMINATION OF THE PLAINTIFF, INCLUDING LISTENING TO HIS HEART, BREATHING, OR PERFORM ANY PHYSICAL TESTS

On Plaintiff's Right Arm and/or Observe Plaintiff's Arm And The Scaring From Dog Bites, Atrophied Tricep,

94.) Plaintiff Avers Dr. J. Wright Prescribed "Naproxen 300 Mg." To Treat Chronic Nueropathic Pain And Chest Wall/Heart Pain Which Was Medically Ineffective For Plaintiff's Nueropathic Condition As An Treatment,

95.) On or About Febuary 21, 2018 URC Doctor's John Doe #1, #2, #3 Returned Dr. J. Wrights CT SCAN Treatment Submission Directing Dr. J. Wright To Have Plaintiff Undergo An 'Mental Health' Evaluation Based Upon Dr. J. Wrights Treatment Submission,

96.) Dr. J. Wright Failed To Have Plaintiff Undergo Any Mental Health Evaluation As Doctors John Doe #1, #2, #3 Ordered Failing To Follow Doctors Orders,

97.) Plaintiff Avers URC Doctors John Doe #1, #2, #3 Failed To Treat Him For His Heart Condition or Refer To An Cardiologist Alternately And Conspired To 'Bource' Plaintiff's Complaint Under An 'Mental Health' Allegation With Dr. J. Wright, Dr. J. Bretton, Nurse S, Beckford, Nurse T. Dyle, Nurse H. O'Connor and/or Failed To Treat Him To Save Money and/or Due To Costs,

98.) On or About Febuary 27, 2018 Dr. J. Wright Re-Submitted An Appeal To URC Dr's John Doe #1, #2, #3 Without Having An 'Mental Health' Evaluation Yet Claiming Mental Health Findings From An Evaluation Misrepresenting The Truth To URC Doctor's John Doe #1, #2, #3,

"Z3"

99.) Based On Information And Belief Dr. J. Wright Submitted ("OTHER") Information To The URC Committee Doctors With The Intent Of Having Plaintiff Denied Treatment To (POLICE) Any Significant Heauty Problem With Plaintiff's Heart Due To The Complete Failure To Treat Plaintiff, Para. 1 — 99 Incorporated, And This Was Done In Collusion With Other Defendants SUPRA.;

100.) On Or About March 21, 2018 Plaintiff Was Denied Treatment By The URC Doctors John Doe #1, #2, #3 Based Upon The Acts AND/or Omissions of Dr. J. Wright SUPRA. Para. 1 -99 Incorporated,

101.) On Or About May 11, 2018 Plaintiff Filed This Instant Action Originally And His Pain Medication For "Gabapentin 800 Mg" Was Stopped. Gabapentin 300 Mg. Was Ordered By Dr. J. Wright On Or About February 27, 2018; Plaintiff's Medication Was Stopped On Or About May 12, 2018 By Nurse S. Beckford Upon Information And Belief AND/or Nurse J. Doe In Retaliation For Filing An Civil Suit AND/or Failing To Follow Doctors Orders Properly,

102.) Based Upon Information And Belief Plaintiff Avers That He Has/Had An Significant Injury To His Left Chest Wall And Exterior Wall of His Heart From An Object

Within His Body AND/or Body Part Penetrating, Protruding, Puncturing His Heart Wall / Chest Wall Which Could Have And Can Still Cause His Death. Plaintiff Avers He Experiences Constant Pain Within His Heart / Chest Wall, Fluttering of The Heart And Periodic Creeping Pains Down His Left Arm Traveling Into His Hand / Fingers And This Was An Daily Occurance Waiting For Medical Treatment At Osborn C.I. From September 27, 2017 Through January 31, 2018 Assigned To An Doctor's Appointment Schedule But Never Treated By Dr. J. Bretton,

103.) Plaintiff Avers The Injury To His Arm Caused By An Dog Bite Accured In 2010 And Left Him With An Chronic Nueropathic Pain Condition And That He Was Prescribed Medication Daily By Dr. J. Bretton In The Past For This Condition At Osborn C.I. And Treated Indifferently During The Months Seeking Treatment Supra. Para 1 – 103 Incorporated,

104.) Plaintiff Avers In Light of The Facts Supra. He Is Fortunate To Be Alive And Faced An Substantial Risk of Death By The Acts And Omissions of The Defendants, Para. 1 – 103 Incorporated, Which They Knew or Should Have Known Were Wrongful And Violative of Plaintiff's Rights Under The U.S. Constitution Am. 8, Am 14, Other Laws,

- 105.) Plaintiff Avers He Suffered Physical, Emotional, Psychological Pain By The Complete Failure To Treat Him Medically For Serious Medical Need's, And The Failure To Treat Him Adequately And Timely, Para 1-104 Incorporated,

- 106.) Plaintiff Avers That UConn Maintained An Custom Of Practicing Medicine Within CTDOC Under Substandard Quality Controls And Policed Its Medical Failures By Practice And Lost Its Contract To Provide CTDOC Prisoners Medical Care Based On System Wide Failures In Inmate Medical Care And Numerous Medically Related Inmate Deaths. Plaintiff Avers Defendants Are Knowledgeable Of There Failures Based In There 'Policing' Practices Para 1-105 Incorporated,

- 107.) Plaintiff Avers Because Of The Failure To Treat Him Medically He Suffered Significant Chronic Pain, Fear Of Death And That His Condition Made His Life In Prison Burdensome And Unordinary

- 108.) Plaintiff Requests The Court Attach An Pendant Jurisdiction State Of Connecticut Negligence/Malpractice Claim As Defendants, Para 1-107 Incorporated, Failed To Treat Him With An Duty Of Care Of Others Of Similar Training, Skills, Experience And Omitted Or Committed Acts Comprising Negligence Injuring Plaintiff, Para 1-108 Are Incorporated.

DAMAGES REQUESTED!
1.) COMPENSATORY: 7.5 MILLION AND/OR COURT SET.
2.) PUNITIVE: 7.5 MILLION AND/OR COURT SET.
3.) EMOTIONAL: 500,000.00 AND/OR COURT SET.
4.) PSYCHOLOGICAL: 500,000.00 AND/OR COURT SET.
5.) NOMINAL: 2,500.00 AND/OR COURT SET.

**F.      DO YOU WISH TO HAVE A JURY TRIAL? YES _X_ NO_____**

**G.      DECLARATION UNDER PENALTY OF PERJURY**

Warning: You must sign this or your complaint will not be filed.

By signing this complaint, I certify under penalty of perjury that the information contained in this complaint is true and accurate to the best of my knowledge.  I understand that if I lie in this complaint, I may be prosecuted for perjury, and punished with as much as five (5) years in prison and/or a fine of $250,000.  See 18 U.S.C. Sections 1621, 3571.

Signature: _____

Signed at _____Bridgeport, CT_____ on ___August 17, 2020___
                                    (Location)                          (Date)

If there are additional plaintiffs, attach another page with the name and signature of each plaintiff on it.  **The complaint cannot be filed without a signature from each plaintiff.**

**H.      FINAL INSTRUCTIONS**

WARNING: Your complaint will not be filed unless you complete each of these steps:

    1.      Answer all questions on the complaint form.

    2.      Sign the Declaration under Penalty of Perjury on p. 7

Remember, the Clerk cannot file your complaint unless you take all of the steps above.

*Revised 12/13/18*